IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2017 Session

## ZYNIA PUA-VINES v. MICHAEL BLANE VINES

**Appeal from the Circuit Court for Hamilton County**
**No. 13D726  L. Marie Williams, Judge**

———————————————————————

**No. E2016-02472-COA-R3-CV**

———————————————————————

This case involves a post-divorce modification of a parenting plan.  Appellee/Mother filed a petition to modify the parties' parenting plan, alleging that: (1) Father had moved, requiring a modification in the transportation arrangements; (2) Father had preemptively refused to pay the oldest child's private school tuition at Girl's Preparatory School ("GPS"); and (3) Father should be found in contempt for failing to pay the children's extracurricular expenses, in violation of a prior court order.  Father counter-claimed for contempt, stating that, without his consent, Mother had enrolled the older child in a private school.  The trial court found Father in civil contempt, entered two monetary judgments against Father, and modified Father's child support and the parties' transportation schedule.  Determining that the parties agreed to Catholic education for the children, and Father is not liable for private school tuition costs when the parties did not agree on the private school, we reverse the ruling regarding Father's share of the tuition for the older child.  We also reverse the trial court's judgments against Father for $6,209.40 in extracurricular expenses, $787.59 for out-of-network dental expenses, and its finding of contempt, and its assessment of $150.00 per month prospective piano and dance lesson fees against Father.  Finally, we affirm the trial court's entry of Mother's child support worksheet and modification of the parties' transportation arrangements. Affirmed in part, reversed in part, and remanded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J, and JOHN W. MCCLARTY, J., joined.

Jillyn Marie O'Shaughnessy and John P. Konvalinka, Chattanooga, Tennessee, for the appellant, Michael Blane Vines.

Jennifer Hooks Lawrence and David Houston Lawrence, Chattanooga, Tennessee, for the appellee, Zynia Pua-Vines.

## OPINION

## I. Background

Appellant Michael Vines ("Father") and Appellee Zynia Pua-Vines ("Mother") are the parents of two daughters, who were born on July 28, 2002 and August 31, 2006. At the time of trial, for the 2016-2017 school year, the older child was entering ninth grade, and the younger child was entering fifth grade. The parties were divorced by order of the Circuit Court for Tuscaloosa County, Alabama, on February 13, 2007. In conjunction with the divorce, the parties entered an Agreement in Contemplation of Divorce (the "February 13, 2007 Agreement"), which was incorporated into the final decree of divorce. Under the February 13, 2007 Agreement, the parties shared joint custody of the children, and Mother was designated as the primary residential parent. The February 13, 2007 Agreement also provided that: (1) Father would pay child support in the amount of $1,200.00 per month; (2) Father would provide medical and dental insurance for the children; and (3) the parties would each pay one-half of any uncovered medical or dental expenses.

In October of 2012, Mother and the children moved to Chattanooga, Tennessee. Father remained in Alabama. On April 1, 2013, Mother filed a petition to enroll the Alabama divorce decree in the Circuit Court of Hamilton County ("trial court"), pursuant to Tennessee Uniform Enforcement of Foreign Judgements Act, Tennessee Code Annotated Sections 36-6-101, *et seq*. The divorce decree was enrolled by consent in the trial court on July 16, 2013.[1]

On May 19, 2014, Mother filed a petition to modify the February 13, 2007 Agreement, and the trial court heard Mother's petition on May 15, 2015. On August 25, 2015, the trial court entered an order and a Permanent Parenting Plan (the "August 25, 2015 Parenting Plan"). In relevant part, the trial court's memorandum opinion, as incorporated in its August 25, 2015 order states:

> Since the final decree of divorce was entered February 13, 2007, there have
> been several changes of circumstances which the Court finds material. This

---

[1] The consent order enrolling the foreign divorce degree erroneously states that "the Final Decree of Divorce of the Circuit Court of Sarasota County, Florida is registered as a judgment of this Court," but it is undisputed that the parties' final decree of divorce was entered in the Circuit Court for Tuscaloosa County, Alabama.

determination is controlled by T.C.A. 36-6-101(a)(2)(C). First, the Mother has relocated from Alabama to Tennessee and has moved a significantly greater distance from the Father's residence than initially contemplated by the parties. Next, the communication between the parties has become very acrimonious and the cooperation that existed at the time of the divorce no longer exists or is minimal at best. Further, the Father has changed from a Monday to Friday job to a position in which his work responsibility rotates on a four-day basis and he sometimes works the night shift and sometimes works the day shift…. The tension resulting from these changes results in the current parenting plan not being in the best interest of the two children….

\* \* \*

A dispute has arisen about the payment of tuition. The Alabama final decree and the permanent parenting plan proposed by each party provided that each party shall pay one-half of all private school related expenses. [Father] rejected a modification of this plan in trial, which proposed modification would require the private school tuition to be paid *pro rata* to the income of each party…. Further, both of the parties' proposed permanent parenting plans are in accord on this issue.

There remains the issue of expenses which may or may not have been paid by Mr. Vines. There is no contempt petition pending and the Court simply ORDERS the Father to pay his share of any outstanding bills for extracurricular activities or school-related activities which have not been paid within the next 30 days.

The August 25, 2015 Parenting Plan provided that the parties would share joint decision-making regarding the children's: "(1) educational decisions; (2) extracurricular activities; (3) religious upbringing; and (4) non-emergency health care." The plan also set a residential schedule, under which Mother would have the children for 265 days each year, and Father would have the children for 100 days each year. Additionally, the August 25, 2015 Parenting Plan incorporated a paragraph from the February 13, 2007 Agreement concerning the children's educational expenses:

The parties shall each pay one-half (50%) of all private school tuition, school supplies, fees, extra-curricular expenses, school trips, sport activities, graduation expenses, and any and all other school or extracurricular expenses incurred on behalf of the minor children of the parties, which expenses have been mutually agreed upon in advance of incurring the same.

- 3 -

On February 1, 2016, Mother filed a petition for modification and contempt, alleging that material circumstances had substantially changed, thus requiring modification of the August 25, 2015 Parenting Plan.[2] Specifically, Mother alleged that: (1) Father had relocated to McCalla, Alabama, and this move required a modification in the transportation arrangements; (2) Father had failed to pay outstanding bills for extracurricular activities, in violation of the prior court order; and (3) Father had expressed that he did not plan to pay his share of private school tuition for the older child. Mother requested that the trial court designate her as the sole decision-maker for the children and that it amend the children's visitation schedule. Mother also asked the trial court to find Father in contempt of the trial court's previous order.

On May 23, 2016, Father filed a response to Mother's petition and a counter-petition for modification and contempt. In his counter-petition, Father averred that Mother, "in willful contempt of [the trial] [c]ourt's [o]rders," had enrolled the older child at Girls Preparatory School ("GPS") for the 2016-2017 school year without obtaining Father's agreement. Father also requested child support modification due to a significant decrease in his income. Father further requested that the trial court dismiss Mother's petition for modification and contempt and find her in contempt of the trial court's previous order.

On June 7, 2016, Mother filed an answer to Father's counter-petition. Mother admitted that she had enrolled the older child in GPS but stated that Father "unreasonably withheld approval of the enrollment, and Mother took action because time is of the essence, and that it is in the minor child's best interest to attend GPS." Mother denied all other material allegations contained in Father's counter-petition.

The trial court heard the parties' petitions on August 11, 2016. Mother, Father, and Laura Goodhard, director of admissions for Notre Dame High School,[3] testified at the hearing. By order of November 15, 2016, the trial court found, in relevant part, as follows:

1. [Father] is held in contempt on the child support issues brought before the Court in this matter.

2. As there is no exception for expenses that are incurred from a medical or

---

[2] Although Mother titled this filing "petition to modify," we note that Mother sought, in part, to enforce the August 25, 2015 Parenting Plan, in that she requested the trial court to order Father to pay fifty percent of private school tuition. It is well-settled that "a trial court is not bound by the title of the pleading, but has the discretion to treat the pleading according to the relief sought." *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995). Accordingly, we will give effect to the substance of Mother's petition for enforcement and modification, rather than to its terminology or form.

[3] Notre Dame High School is a private, Catholic high school in Chattanooga, and it is Father's high school of preference for the older daughter.

dental provider which is "out-of-network," and each party is required to pay fifty percent (50%) of any uncovered medical expense, the Court enters judgment in the amount of… $771.06 against [Father]….

3. For extracurricular expenses, unpaid and owed by the Father, the Court enters judgment in the amount of… $6,209.40 against [Father]….

4. The Court leaves the parenting schedule as it was modified in the August 25, 2015 Order, however, on each and every Friday and Sunday when the Father has residential time with the minor children and he is not working, the Father shall provide the transportation to and/or from Chattanooga. In the event the Father is required to work on any day that transportation is required, the Mother shall provide the transportation to and/or from Chattanooga. The Father shall continue to provide the Mother with his schedule of work days.

5. The parties' oldest minor child… shall attend the Girls Preparatory School ("GPS")…. The Father shall pay each year that portion of the current GPS tuition which is equal to the current Notre Dame [High School] tuition for a Roman Catholic child and the Mother shall pay the balance….

6. The parties' youngest minor child… may attend St. Jude Catholic School through the completion of the eighth grade as Mother shall decide. Mother and Father shall each pay one-half of the tuition for St. Jude Catholic School. Mother may choose to enroll [the youngest child] at GPS instead of St. Jude Catholic School. If Mother decides to enroll [the youngest child] at GPS before the beginning of ninth grade, Mother shall pay the full GPS tuition until [the youngest child] begins ninth grade.

\* \* \*

8. Father shall pay one-half (1/2) of the expense for the piano lessons for the minor children which average… $200.00 per month, and dance lessons which average… $100.00 per month, for a total of one-half (1/2) of… $300.00 each month….

Father appeals.

## II. Issues

Father raises the following issues for review, as set out in his brief:

1. Whether the trial court's order that Appellant pay one-hundred percent of Notre Dame High School's tuition as his share of the parties' oldest child's tuition at Girls Preparatory School was contrary to the intent and plain language of the operative permanent parenting plan, based on a clearly erroneous assessment of the evidence, and employed reasoning that caused an injustice to Appellant.

2. Whether the trial court's order that Appellant pay a judgment to the Appellee for one-half of the piano and dance lessons for the parties' two minor children was contrary to the intent and plain language of the operative permanent parenting plan, based on a clearly erroneous assessment of the evidence and employed reasoning that caused an injustice to Appellant.

3. Whether the trial court's order that Appellant pay an additional $150 per month in child support towards the parties' children's piano and dance lessons was based on a clearly erroneous assessment of the evidence and employed reasoning that caused an injustice to the Appellant.

4. Whether the trial court erred in finding Appellant in contempt of the trial court's May 15, 2015 order.

5. Whether the trial court's order that Appellant pay the same dental expense twice was illogical and based on a clearly erroneous assessment of the evidence.

6. Whether the trial court erred by recalculating child support without including Appellant[']s monthly expense related to the children's health and dental insurance premiums.

7. Whether the trial court's modification of the transportation arrangement between the parties was based on a clearly erroneous assessment of the evidence and employed reasoning that caused an injustice to the Appellant.

### III. Standard of Review

In this non-jury case, our review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744 (Tenn. 2002). To preponderate against the trial court's findings of fact, the evidence "must support another finding of fact with greater convincing effect." *4215 Harding Road Homeowners Ass'n v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011). We review the trial court's resolution of

questions of law *de novo*, with no presumption of correctness. ***Id.*** "Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses." ***Randolph v. Randolph***, 937 S.W.2d 815, 819 (Tenn. 1996).

## IV.  Analysis

### A.  Private School Tuition

Father contends that the trial court erred in ordering him to pay the private school tuition in an amount equal to the full Notre Dame High School tuition.  The Tennessee Child Support Guidelines provide that a trial court may add "extraordinary educational expenses" to the base child support amount to pay for private school tuition when the trial court finds such a deviation to be in the best interests of the children.  Tenn. Comp. R. & Regs.  1240-02-04-.03(6)(b)(5),  1240-02-04-.07(1)(b),  (2)(d).  In particular, Tennessee Rules and Regulations 1240-02-04.07(2)(d) provides, in pertinent part:

> 1. Extraordinary Educational Expenses.
>
> > (i)  Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary educational expenses include, but are not limited to, *tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling* that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.
> >
> > (ii)  In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

(Emphasis added.); *see also* ***Kaplan v. Bugalla***, 188 S.W.3d 632, 636 (Tenn. 2006) (finding that a trial court "can order the obligor to pay less than the full amount of a child's (or children's) extraordinary educational expenses, depending upon the proof in a particular case."); ***In re Andrea A.R.***, No. M2011-00574-COA-R3-JV, 2012 WL 397475 at *7 (Tenn. Ct. App. Feb. 7, 2012) (citing Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)) ("If the court finds private schooling is appropriate, then the trial court is required to calculate the extraordinary education expenses separately and add them to the base child support award.").  The Child Support Guidelines also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is "appropriate to the

parents' financial abilities and to the lifestyle of the child if the parents and the child were living together." Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(ii).

In its November 15, 2016 order, the trial court found, in relevant part:

> The Court finds a modification of the Child Support Worksheet needs to be addressed as the Court is including private school tuition on the worksheet. As stated previously, the Alabama decree evidences the parties' intent for these children to attend private school. The Court further finds the agreement evidences an intent for that tuition to be divided equally. The private school tuition shall be included as a deviation on the Child Support Worksheet.

> The Court finds [the oldest child] shall be permitted to attend Girls Preparatory School. The evidence before the Court establishes her attending GPS is in her best-interest. The Mother's testimony established the suitability of that school for the child. The Father's objections to the school are based on the tuition expense and religious grounds. The Court finds nowhere in the Alabama decree a requirement that the children attend Catholic school. The Court finds it in the best interest of [the oldest child] for her to attend GPS and the GPS tuition in the amount of $23,450.00 is to be divided between the parties. It is ironic that Mr. Vines found it fair and equitable to divide the tuition and the expenses equally between the parties when he was making more than twice as much as Mrs. Vines. However, now that he is earning about half as much as Mrs. Vines, he objects to the arrangement he found equitable previously. The reality of the situation is that Mr. Vines has failed to manage his money well and has managed to find himself significantly in debt. However, that debt should be extinguished in large part by 2017. He also has not included on his income and expense statement any contributions made by his wife to the household. The Court finds Mr. Vines should pay each year that portion of the GPS tuition which is equal to the Notre Dame tuition for a Roman Catholic child and Mrs. Vines shall pay the balance.

As noted by the trial court, the provision, from the February 13, 2007 Agreement, regarding the children's education was included in the August 25, 2015 Parenting Plan. This provision dictates

> [t]he parties shall each pay one-half (50%) of all private school tuition, school supplies, fees, extra-curricular expenses, school trips, sport activities, graduation expenses, and any and all other school or extracurricular expenses incurred on behalf of the minor children of the parties, which expenses have been mutually agreed upon in advance of

incurring the same.

The August 25, 2015 Parenting Plan also contains a clause requiring joint decision-making related to the children's education, to wit: "major decisions regarding the children shall be made as follows: educational decisions made jointly." Father argues that he was excluded from the decision-making process, when Mother unilaterally enrolled the older child at GPS. From our review of the record, the evidence preponderates in favor of Father's contention. Father testified that Mother informed him that she planned to enroll the older child at GPS. Father voiced his disagreement; nonetheless, Mother enrolled the child over Father's protest. Mother's testimony corroborates Father's testimony. Specifically, Mother testified that she and "Mr. Vines did communicate prior to divorce that [they] wanted [the children] to attend Catholic school." Despite their agreement, Mother unilaterally enrolled the older child in a non-Catholic, private high school, GPS, thus precluding Father from the joint decision-making process. Because Father was foreclosed from participating in the decision to enroll the older child at GPS, we conclude that he should not be made to pay tuition above what was contemplated in the August 25, 2015 Parenting Plan. As set out in context above, the August 25, 2015 Parenting Plan provides that Father will pay one-half of the private school tuition. Here, the trial court ordered Father to pay the entire tuition amount for Notre Dame High School, as his share of the tuition for GPS. From the record, for the 2016-2017 school year, the trial court's order would require Father to pay $11,427.00 in private school tuition, i.e., the entire tuition for Notre Dame High School. The annual GPS tuition is $23,450.00. Ostensibly, the trial court's order results in Father paying forty-nine percent of the GPS tuition. Again, Mother acted unilaterally in enrolling the older child at GPS; this was a clear violation of the parties' agreement. Therefore, we conclude that Father should be ordered to pay one-half of the Notre Dame High School tuition, i.e. $5,713.50 for the 2016-2017 school year, and then one-half of the annual Notre Dame High School tuition going forward unless and until Mother and Father jointly agree to enroll the child in another school. Accordingly, we reverse the trial court's order concerning the amount of tuition that Father will pay for the older child. We remand for entry of an amended order comporting with this Court's holding.

Concerning the younger child, the trial court found:

> The Court also finds it appropriate for the younger child[] to attend St. Jude[] Catholic School through the completion of eighth grade. She then will attend Girls Preparatory School as Mrs. Vines has again articulated appropriate reasons why that school is preferable for her education than is Notre Dame. If Mrs. Vines wants her to attend GPS before ninth grade, she shall pay the full GPS tuition until ninth grade. Each party shall pay one-half of the St. Jude[] tuition.

It is undisputed that the parties agree that the younger child should attend St. Jude

Catholic School through the eighth grade. We affirm the trial court's holding that both Mother and Father shall pay one-half of the younger child's tuition for St. Jude Catholic School.

## B. Dental Bill for $771.06

Turning to the trial court's $771.06 judgment against Father for an out-of-network dental bill for the younger child, the parties agree that the trial court's judgment against Father is duplicative and in error because the dental bill is included in the $6,209.40 judgment against Father, discussed below. Accordingly, we reverse the trial court's judgment against Father for $771.06 for the dental expense, as this expense is subsumed in the $6,209.40 judgment.

## C. Judgment against Father for $6,209.40

Concerning the trial court's judgment against Father for $6,209.40, the trial court's order states, in relevant part, that:

> The Court further finds that the extracurricular expenses must be mutually agreed upon in advance of incurring the same. The Court finds the parties disagree on whether or not Mr. Vines objected to the extracurricular expense before the expense was incurred and finds Mrs. Vines more credible than Mr. Vines. The Court already has adjudicated the extracurricular expenses up to May 15, 2015. The Court, in that order, required the Father to pay his share of any outstanding bills for extracurricular activities or school related expenses which had not been paid within the next 30 days. The Court agrees with Mr. Vines' counsel that no number was included in that order. A review of Exhibit 2 demonstrates that Mr. Vines owes 50 percent of the listed expenses. The Court finds those expenses are unpaid and the Court ORDERS judgment in the amount of $6,209.40 in favor of Mrs. Vines against Mr. Vines.

At trial, Mother provided an itemized list of $16,873.81 in alleged expenses for the children. The list includes: (1) $1,500.00 as a deposit for the older child to attend GPS; (2) costs for piano and dance lessons for both children from 2013 through 2016, totaling $11,410.21; and (3) other costs for medical care for the children—a dental bill for $787.59, art classes, tutoring, a trip for the older child, and books, totaling $3,963.60. The parties also agree that Father has previously paid $2,227.50 toward his share of these costs. However, Father contends that: (1) he should not pay half of the $1,500.00 GPS deposit; (2) he should not pay for piano and dance lessons; and (3) because half of the remaining costs total $1,981.80,[4] Father has made an *overpayment* of $245.70, and he

_____

[4] In his brief, Father lists the costs that he agrees that he should pay. However, his list omits three

- 10 -

should be credited that amount.

As to the $1,500.00 deposit for GPS, in her brief, Mother states that Father's "judgment of $6,209.40 should be reduced by $750.00 which is one-half of [the older child's] GPS Enrollment Deposit of $1,500.00." Regarding the costs for piano and dance lessons totaling $11,410.21, Father contends that he informed Mother that he did not agree to these expenses. Pursuant to the trial court's finding that Father is liable for costs, **to which the parties agreed**, Father argues that he is not obligated to pay any costs that Mother incurred after Father made his disagreement known. As noted above, the trial court held that "the extracurricular expenses must be mutually agreed upon in advance of incurring the same." Turning to the record, Father testified, in relevant part, as follows:

> Q. Can you afford to pay one-half of your daughters' dance and piano lessons?
>
> A. I cannot.
>
> Q. Have you expressed that to [Mother]?
>
> A. In an e-mail back in May of 2013, I believe, when that first – when my income first – kind of assuming our situation here.

Mother disagreed that Father could not afford the piano and dance lessons but agreed that Father had communicated his objection to continuing the lessons:

> Q. So would you agree with me that in an e-mail [Father] has expressed to you his inability to pay for the expenses?
>
> A. He did not express his inability. He just said he didn't agree and he wasn't going to pay for them anymore.

Despite the foregoing testimony, Mother contends that, because the trial court found that "the parties disagree on whether or not [Father] objected to the extracurricular expense before the expense was incurred and [the trial court] finds [Mother] more credible than [Father]," the parties must split the costs of the dance and piano lessons. Although this Court gives great weight to a trial court's credibility findings, **Randolph**, 937 S.W.2d at 819, a finding of credibility will not usurp the trial court's substantive finding that "the extracurricular expenses must be mutually agreed upon **in advance** of incurring the

---

expenses, totaling $106.01, for the children's medical care. Father raises no argument about the omitted medical costs; he argues that he should not be assessed any costs for the deposit and piano and dance lessons *only*. Therefore, from this Court's review of the record, the proper amount, constituting fifty percent of the parties' undisputed costs is $1,981.80.

same." Mother's testimony, while credible, clearly states that Father never agreed to the $1,500.00 GPS deposit (see discussion above) or to the $11,410.21 in dance and piano lessons. Removing Father's share of the GPS deposit and lessons, we are left with $3,963.60 in other expenses, which are dental, medical, or educational expenses. Based on the August 25, 2015 Parenting Plan, Father should be charged with one-half of this amount, or $1,981.80. It is undisputed that Father has paid a total of $2,227.50. Therefore, Father should receive a credit for $245.70 overpayment. For these reasons, we reverse the trial court's judgment against Father for $6,209.40. We remand for entry of an amended judgment in favor of Father for $245.70.

Having determined that Father has, in fact, paid an amount more than his share of the children's expenses, we further conclude that the trial court erred in finding him in contempt of its order regarding these expenses. Accordingly, we also reverse the trial court's finding of contempt.

### D. Monthly Expenses for Prospective Piano and Dance Lessons

The trial court found that Father must pay "one-half (1/2) of the expense for the piano lessons for the minor children which average… $200.00 per month, and dance lessons which average… $100.00 per month, for a total of one-half (1/2) of… $300.00 each month…." As set out in detail above, at trial, the parties testified that Father voiced his disagreement concerning the piano and dance lessons in 2013. In conjunction with the findings above, and the trial court's determination that "extracurricular expenses must be mutually agreed upon in advance of incurring the same," we reverse the trial court's finding that Father shall pay $150.00 per month for prospective piano and dance lessons.

### E. Father's Insurance Costs for the Children

Father argues that the trial court erred by failing to adopt his proposed child support worksheet, submitted after the trial concluded. Father's worksheet included an additional credit of $164.67 per month for Father's alleged payments for the health and dental insurance for the children. However, when asked at oral argument before this Court, Father's counsel stated that no proof was presented at trial as to the amount that Father pays each month for the children's health and dental insurance. On appeal, this Court may consider only "facts *established by the evidence in the trial court* and set forth in the record…." Tenn. R. App. P. 13(c) (emphasis added); *see also* **Chandler v. Chandler**, No. W2010-01503-COA-R3-CV, 2001 WL 856585, at *6 (Tenn. Ct. App. July 31, 2001); **McDowell v. McDowell**, No. M2000-02153-COA-R3-CV, 2001 WL 856585, at *1 ("appellate courts may only review what is in the record and not what might have been or should have been included."). Accordingly, we decline to modify the child support judgment.

## F. Modification of Transportation Arrangement

Father contends that the trial court erred in modifying the children's transportation arrangements. The August 25, 2015 Parenting Plan required Mother to take the children to Father's residence by 6:00 p.m. on alternate Fridays and for Father to return the children to Chattanooga by 5:15 p.m. on Sunday. The trial court's order changed only the transportation arrangements and left the residential schedule intact. Pursuant to the trial court's order,

> on each and every Friday and Sunday when the Father has residential time with the minor children and he is not working, the Father shall provide the transportation to and/or from Chattanooga. In the event the Father is required to work on any day that transportation is required, the Mother shall provide the transportation to and/or from Chattanooga.

Father argues that the trial court abused its discretion in modifying the transportation arrangements because Mother failed to show a material change in circumstance affecting the welfare of the children. As held by this Court, trial courts are vested with broad discretion in making determinations regarding transportation. *Ohme v. Ohme*, No. E2004-00211-COA-R3-CV, 2005 WL 195082, at *5 (Tenn. Ct. App. Jan. 28, 2005). A trial court abuses its discretion when its "ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

Before Mother filed her petition to modify, Father moved from Homewood, Alabama to McCalla, Alabama. The parties agree that Father's move resulted in Mother having to drive through Birmingham on Friday at 5 p.m. to deliver the children for visitation with Father. Mother testified that this requires an additional forty-five minutes of driving time. In his testimony, Father agreed that, if he was not working on a Friday, he would be willing to drive to Chattanooga to pick up the children, as follows:

Q. Now, assuming there is a Friday you're off—

A. Yes.

Q. Are you willing to do the Friday leg of the trip rather than the Sunday leg—

A. I am.

Q. – if you're not working?

A. I am. And as a matter of fact, we have been doing that since May,

because I would offer up—I mean, part of that list that I gave her on my schedule includes the, hey, I can do it, you know, if—if I can pick up Friday and you do Sunday. And it's been working well.

Given the parties' testimony, and what appears to be a compromise between them regarding transportation, we cannot conclude that the trial court's adoption of the parties' compromise was an abuse of discretion.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order concerning Father's payment of private school tuition for the older child, its judgment against Father for $6,209.40 in expenses, $787.59 in a duplicative dental bill, its finding of contempt, and its assessment of $150.00 per month in prospective piano and dance lesson fees against Father. We remand for entry of an amended judgment, reflecting that Father will pay one-half of the tuition for Notre Dame for his portion of the older child's tuition, and for entry of judgment in favor of Father for $245.70 for overpayment of expenses. The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are assessed one-half to the Appellant, Michael Blane Vines and his surety, and one-half to the Appellee, Zynia Pua-Vines and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE